Good morning, Judge Pius, Judge DeSema, and Judge Friedman. My name is Stephen Yagman, and I represent myself. Information. Where is it? Information, it seems, is either in a person's mind or it's in some records. I can't think of any place else where it is. Could you keep your voice up, Mr. Yagman? I can't think of any other place where information resides. And what's happened here is that the Central Intelligence Agency has chosen, because it suits its purposes of withholding information in violation of the spirit of the Freedom of Information Act, to construe my request for records of people who did some torturing for the United States government. It doesn't want to give up that information, so it chose to look at the words that I used, one of which was records, and say, you can't have it because you've asked us an interrogatory. I've always believed that you should say everything. Well, it does ask for the identity of persons, right, your request? It asks for records that contain the identities of persons of whom President Obama, in the summer of 2014, said, we tortured some folks, in quotes. And what I asked for was all records that identified the we. Well, let me ask you, is there like a, I've been thinking about this, is there like a, I understand the difference between an interrogatory and a request for protection of documents, but is there like a, can you think of some other way to phrase it to, you know, hone it in more on records, as opposed to, you know, give me a list of the names of people who are alleged to be torturers? But I didn't ask for a list of the names of people. I asked for records that contained the names of those people. There isn't any other or better way that I possibly could have put that. And no matter what words I would have used, I still wouldn't have gotten those records. What time period were you asking this to cover? For which time period? Well, the time period. I mean, immediately right after 9-11 or from 9-11 until today? Well, as of the time that President Obama, I believe it was August 9th, 2014, said in public, quote, we tortured some folks, whatever that was. We tortured some folks. Obviously, it had to do with after 9-11. I believe the torture began in 2002, and it was up until that time at which the President said that. Now, since then, the names of two of the torturers who devised the program, Drs. Mitchell and Jessen, were disclosed. But they obviously didn't do all of that by themselves. Well, you see, Mr. Yagman, your request, if it's proper, would authorize a request like this for records. I'd like all the records of the persons in World War II who are recommended for the Silver Star, but were not awarded the Silver Star. Right? That's a proper document request? I believe that it's proper documents that you would want. And that could be, you know, thousands of people. I mean, how would the agency go, how would you make the search even for that? They would do the best they could. Here they did absolutely nothing. Well, they could also come back and say to you, that's really very, very broad, and we really, could you please narrow your request, and it's going to take a huge number of person hours to do this. And, you know, it's a request for records, but we need your help in narrowing it. Ah, but they didn't do that here, did they? They tried to come back. They tried to contact you. But they didn't say that. What they said was, you haven't asked for records, rather you've asked for information, and therefore you've put an interrogatory to us, and you can't do that. But that was all they said, and they're stuck with their record. Well, let's assume that they're stuck with what they said to you initially, that you did request records. They did make several phone calls, and in one of them, at least according to supplemental record at page 5, it says the FOA branch chief said we can't process the request in its current form because it didn't reasonably describe the records sought, and we'll work with you to craft a more focused request. And what did you do with that message or that information? I stood on my original request, which I think was appropriate. I don't think they were trying to help me at all craft anything. What they were doing was they were doing what they do with Freedom of Information Act requests. They weren't going to give this stuff up, and no matter what words I would have put in there, I never, ever would have gotten these records. They were temporizing. They were avoiding. They weren't doing what they were supposed to do. And what they were supposed to do was to say either it's too broad, narrow it, or we're going to invoke certain exemptions and you're not going to get a lot of what you want. They didn't invoke any exemptions. Not yet. You think FOIA includes something similar to the federal rules, you know, like a requirement for a more definite statement? In other words, would it have been proper for the agency to say, Mr. Hagman, your request is too broad and too ambiguous and too amorphous, you have to make it more specific? Could they do that? That's a good question. Legitimately? I think the answer is no. So they have to. In other words, as long as the request describes, you know, a record, that's sufficient under FOIA. Right. Is that your position? It is, and I'd like to reserve the three minutes or so that I have left, if I may.  Thank you. That's fine, Mr. Hagman. May it please the Court. Jerry Sinsack, appearing on behalf of the United States. Mr. Hagman has not yet submitted a valid FOIA request. The request he has made, as currently formulated, improperly asks the agency to answer a question and to create a record. No, it doesn't. No, it doesn't. There is a question mark at the end, but he asks for records and information. Now, he could have said, he didn't say records that contain, but that's the clear implication of what he's asking for. I want information which is contained in records, or I want records that contain the following names and information. And then he also threw in, and what did the President mean by the word we? You can ignore that part of it, but you can't ignore and refuse to respond to the first part of it. Well, Your Honor, yes, the CIA was not obligated to respond to that, because in a sense it is, in asking who, for records that contain the names that, I mean, there's a question about what he meant by or what it requires an investigation into. What did President Obama mean by that? Well, forget that part of it. Why is it any different from Judge Tshishimi's question, give me the records of all the people that were recommended for the Medal of Honor, whatever it was, in World War II, which may be tens of thousands of people. And the government would then say, this is too broad. That's not narrow enough. But they would respond. Well, I agree that Judge Tshishimi's question is very specific, because it asks for who the people were who were recommended. And that's a record that can be searched for. I mean, presumably a document that says the following people were recommended for a Silver Star. Probably thousands of documents. It may be kept in some in the Army record and some in the Navy record and some of the Air Force records. You'd have to do a huge amount of searches. It would be very burdensome to do what Judge Tshishimi's hypothetical proposed. But you'd still be required to respond and either say, narrow it, or this is too burdensome, or it's going to take too much time. You can't say, we have no obligation to respond. Well, I think the problem – I'm sorry. Go ahead. I think part of the problem here is that the way the question was asked, containing names of people who may have tortured someone, those terms themselves are not as clearly defined as what Judge Tshishimi – All right. Let me ask another question, another hypothetical. Would this be proper if Mr. Eggman asked, say this is a request of the Executive Office of the President. You know, I'd like all the records which contain the name of the torturers to whom the President referred to in his speech. Is that a proper request? No, that would not be. Why not? Let me slightly rephrase Your Honor's hypothetical. If he had said, I would like an existing record that lists the individuals whom President Obama was referring to, that would be a proper record request. That would be a pre-existing record. You're not asking the agency to go through its records and determine – create that list because it is clear that you don't have to create a list. But if that's what Mr. Yagben is asking for, a pre-existing record that lists the individuals to whom President Obama was referring, that would be a proper record request. Now, that record might not exist. I'm not suggesting it exists, but that would be appropriate. But that is not what he's asking. Now, why is this request different? Well, first of all, he's not asking – it's not clear he's asking for an existing record. He's asking the agency to – Well, of course, you know, you're going to interpret or put that qualification on every request made under FOIA that it has to be for an existing record, right? That's correct. So put that aside. It has to be existing records. Go ahead. Okay. Well, if it's an – again, if the interpretation – and this is why the CIA had asked Mr. Yagben if they could work with him. If his request is for a record listing the names of the individuals that already – under the understanding that that record already exists, the names to whom President Obama was referring, and that's how it's described, that's how the document's described, that is an appropriate record request. And then the response would be there are no such records, right? I mean, that may well be the response, and I think that would – Or invoke an exemption. And then, you know, subsequently there may be an exemption, yes, of course. But I just want to be clear. I mean, there are ways to formulate a proper request. Here the request is for, you know, broadly to create a record, to investigate to whom President Obama was referring, and so forth. But if it's narrowly construed in the manner that I'm suggesting, that would be a proper record request. And that's why the CIA offered to help. Does the CIA have any rules or formal procedures that – It does. They're in the – Other than – they're very brief. They are very brief. There's virtually – Much briefer than a lot of other agencies. Is it the case that each agency has their own separate rules for dealing with FOIA requests? Generally, yes. I can't say what every agency has, but each agency has promulgated regulations governing FOIA. I believe everyone or at least – So there's no administrative – there's no formal administrative process where the agency could say, well, look, you've got to reformulate – we need – we can't work with this request. We've got to work – we've got to reformulate it. I mean, I think, as Your Honor is probably aware, there is an aspect of the regulations that suggests if the regulation is invalid, the agency will offer to help, which it did in this case. But that's – there's nothing more formal. There's nothing more – it's sort of an informal process. Yes. Calling people on the phone and saying – Well, usually – or sending a letter. Yeah, exactly, or calling someone on the phone to offer to work with them to – But don't you – don't you often – you probably represent other agencies besides the CIA in your work at the Justice Department. Don't you often file motions to dismiss or motions for summary judgment in cases saying it's too broad, we can't identify the proper files even to search based on the vagueness of this request? You engage with the other side, even if you think the request is vague or overbroad or burdensome. You don't just say, no, we're not going to do it. Well, Your Honor is correct. And one thing I would point out about the timing here, I mean, the agency sent one letter – I mean, Mr. Yakim filed his request in August and filed suit in October, so there wasn't a lot of time. And the agency, again, after he filed suit, admittedly, but did offer to help work with him. And he – they only sent him two letters. He sent one response and so forth. So I think given perhaps more time or had Mr. Yakim taken up the CIA's offer in December, we may have gotten an amended request before reaching this point. Your Honors, have no further questions? Nope. I have five very quick points I wish to make. First, I think it's too late for them to claim exemptions in response to Judge Pye's suggestion. Why is that? I think they – Suppose we say, now, well, it is – it really does constitute a request within the meaning of FOIA. I think consistent with the purposes of the Act, they should get one bite at this apple. Otherwise, it's going to go on forever. It's going to go on for another two, three years. Can you cite a case that says, you know, when the time limit to claim an exemption expires? I have to go home to Westlaw and look that up, and I will. Second, I don't think FOIA is intended to be sequential or to be done piecemeal. This has been going on now for two and a half years. Assuming this Court might decide in my favor, it will go back to the district court, it will spend another six months or a year there, and then it will be back here again. It will be up to five or six years. I just think that's conceptually wrong. I didn't ask them to construct anything at all. I didn't ask them to prepare records. Obviously, records that you ask for have to be extant records. I can say, because I know it's so, and I could submit something in a 28-J if I need to, that the FOIA rules are the same government-wide. There are no different or separate rules for any agency like the CIA. And last, with respect to the request that I work with the CIA, I'll quote President Obama when somebody asked him why he wouldn't have a drink with Mitch McConnell to which he said, why don't you have a drink with Mitch McConnell? Thank you. All right. Thank you, Counsel. Matters submitted.
judges: Tashima, Paez, Friedman